## CRAMER VS. STONE.

TAXATION: (1) *Effect of general act of* 1860 (ch. 386) *as to equalization of city taxes.* (2) *Fees of city treasurer for certificate of tax sale.*

MUNICIPAL CORPORATION: (3) *Provisions of Milwaukee charter as to cleansing streets valid.*

1. The assessment rolls of 1861 and 1862, upon which taxes *for city purposes* were to be levied in the *city of Milwaukee*, were properly equalized by the board of review created by ch. 172, P. & L. Laws of 1859, and submitted to the common council of said city for confirmation and action; while the assessment rolls for *county and state taxation* of property in the same city were corrected and equalized by the board created by sec. 22, ch. 386, Gen. Laws of 1860.

2. By the charter of Milwaukee of 1852, the city treasurer was allowed ten cents for each certificate by him issued on sales of land for delinquent taxes, which sum was to be added to the amount of such tax, and included in the certificate. By sec. 44, ch. 117, P. & L. Laws

of 1858, the salary of the treasurer was fixed at a specific sum, in lieu of all other compensations, and it was provided that "any *commission or percentage* allowed the treasurer by law for the collection of taxes or on sale of lands shall be paid by him into the city treasury." *Held*, that the words "commission or percentage" must be construed as including the fee of ten cents above named.

3. By the terms of the charter of Milwaukee the street commissioners of the several wards are authorized to require the owners of lots to *cleanse* and repair streets and alleys, to the center thereof, opposite their respective lots, and to make contracts for the doing of the work in case the owner neglects to do so; and the expense is made *chargeable upon the respective lots*. And these provisions of the charter are *valid*.

APPEAL from the County Court of *Milwaukee* County.

Action of ejectment for the possession of lot 2, block 68, in the 7th ward of Milwaukee. Upon the trial the plaintiff offered in evidence a tax deed of the premises in question, sold for the taxes of 1862, under which deed he claimed title. In behalf of defendant it was proven that the lot was sold for general tax $27.82, special tax 45 cents, but that by the tax list the general tax was $27.72, the increase of ten cents being the fee for sale and certificate. Defendant then offered in evidence the original city assessment rolls for 1861 and 1862. To the roll for 1861 was appended a certificate signed by the mayor, comptroller, city attorney, city treasurer, city assessor and nine ward assessors, certifying that they had, as the "Board of Review of the city of Milwaukee," duly equalized and corrected the assessments, after hearing all objections interposed; also a certificate signed by the mayor, city treasurer, city clerk, city assessor and nine ward assessors, stating that they had, as the "City Board of Equalization for the city of Milwaukee," duly equalized and corrected the assessment roll. To this was appended a certificate of the city assessor, concluding with a submission of the roll to the common council of the city for approval and confirmation. To the assessment roll for 1862 were appended certificates of the city treasurer, comptroller, assessor and ward assessors, constituting the "Board of

Review," and the city treasurer, clerk, assessor and ward asses-
sors, constituting the "Board of Equalization," both certificates
being in form and substance like those appended to the roll of
1861 ; also a similar certificate of the city assessor, submitting
the roll to the common council for approval and ratification.
Defendant then proved the confirmation of both assessment
rolls by the common council, and that the annual tax levy for
city and ward purposes for 1862 was made by a resolution of
the council on the real and personal estate within the city, upon
the assessed value thereof according to the assesment roll as
confirmed by the council. It was also shown that the assessment
rolls for 1861 and 1862 were completed by the city assessor and
deposited by him in the city clerk's office, to be laid before the
common council, and after their confirmation by the council
they were kept in the clerk's office, and from them the clerk
made out the tax lists for 1861 and 1862 respectively. The
several ward assessors made duplicates of the assessment rolls
of their respective wards, and, after the city equalization, left
one of the duplicates with the city assessor, from which he
made up the completed city assessment roll, which was depos-
ited with the clerk, confirmed by the council, and made the
basis of the city levy for municipal purposes. The other of
these duplicates was returned by each ward assessor to the clerk
of the board of supervisors, who in 1862, from such returns
and from the county assessment roll of 1861, made a complete
assessment roll for the city, and delivered it to the city clerk,
with a certified statement of the percentage and amount of
state, county and school taxes for the year, which he had ex-
tended in the roll. This roll was copied by the city clerk,
who extended thereon the state, county and school taxes, and
delivered it to the city treasurer, with a warrant for the collec-
tion of the taxes. It was admitted by both parties that the
special tax of 45 cents in question was for street cleaning, un-
der contract purporting to be for the cleaning of streets and
alleys where parties had failed to carry out the requirements of

the law relative to cleaning them. The contract was properly executed, and provided for payment by a special tax upon the respective lots, and was let pursuant to notice published in the official city papers by the street commissioners for the ward. The statutes upon the construction and effect of which the case rested, are fully stated in the opinion of the court. After the conclusion of the testimony and arguments of counsel, the court stated that there seemed to be no facts for the jury to pass upon, to which counsel for both parties assented; whereupon the court instructed the jury to return a verdict for plaintiff. Verdict and judgment for plaintiff; and defendant appealed.

*Johnson & Rietbrock* and *Smith & Stark*, for appellant, contended, among other things, that the general law of 1860 (ch. 386) necessarily had the effect of superseding and repealing the provisions of ch. 172, P. & L. Laws of 1859, in the matter of equalizing the assessments of real estate in the city, and in preparing the assessment roll for the city. Hence the objection that the body created by the statute of 1860 did not equalize the assessment, but a body differently constituted, and there was, therefore, no lawful equalization. Where a statute gives authority to one person expressly, all others are excluded, and a special power is to be strictly pursued. Dwarris on Statutes, 767; Blackwell on Tax Titles, 62.

*J. J. Orton*, for respondent, argued that the general law of 1860 contained no direction or authority as to assessing, levying, collecting and selling for delinquent city taxes, and that it was therefore left to the city, after receiving the assessment roll from the clerk of the board of supervisors, with the amount and percentage of state and county tax which the city was required to pay, to follow its own charter as to the levy and collection of city taxes.

COLE, J. It appears to us that all the objections taken to the regularity of the tax proceedings in this case are untenable.

In the first place it is claimed on the part of the defendant, that the assessment rolls and tax lists of the city of Milwaukee for the years 1861 and 1862 were wholly irregular, and did not afford a legal basis for the sale of the lot in controversy for unpaid taxes in January, 1863. The city authorities for those years proceeded upon the assumption that the law required one assessment roll to be made and perfected for city taxation, and another for county and state purposes. Accordingly the assessment rolls for 1861 and 1862, upon which the taxes for city purposes were to be levied, were equalized and corrected by the board of review under the provisions of ch. 172, P. & L. Laws of 1859, and submitted to the common council for confirmation and action; while the assessment rolls for county and state taxation were corrected and equalized by the board created by the general law of 1860 (ch. 386, sec. 22). The act of 1859 constitutes the mayor, city comptroller, treasurer, city attorney, and the city and ward assessors, a board of review to correct and equalize the assessment lists (sec. 10); and the general law of 1860 makes the several assessors, with the mayor, clerk and treasurer of each city, a board to equalize the assessment of the real property of such city (sec. 22, *supra*). The lists equalized by the former board, when confirmed by the common council, remained in the office of the city clerk, and were made the basis for taxes for general, city, ward and school purposes. And it was made the duty of each assessor, under the law of 1860, on or before the first Monday of July for the year in which all the real property of the state is required to be valued, to make out and deliver to the clerk of the board of supervisors of his county in *tabular form, in a book to be provided by the clerk, a return* of the quantity, description and value of each parcel of real estate subject to taxation as equalized in his city or ward, in numerical order as to lots and blocks, with the name of the owner, if known, and in a separate column the value by him attached to each parcel. This was for the action of the clerk and county board, to enable them to correct,

Cramer vs. Stone.

equalize and perfect these returns made by all the assessors in the county. The clerk of the county board of supervisors was also required to make out and transmit the appropriate assessment roll to the clerk of each town and city in his county, as corrected and equalized by such board, on or before the 15th day of November annually, designating on each of such assessment rolls the amount of state and county tax which the town or city to which such roll belongs is required to pay (section 46). All this machinery, we think, tends to show that the assessment roll which should be equalized by the mayor, city comptroller, treasurer, city attorney and the city and ward assessors, should remain on file in the city clerk's office, and should furnish the basis for taxation for municipal purposes; and that a return should be made in tabular form of the assessment rolls as equalized by the board under the general law, for the action of the county clerk and county board of supervisors, in order to lay the foundation for the imposition of state and county taxes. Unless this view is correct, there would seem to be a serious defect in the law to enable the city of Milwaukee to levy and collect taxes for municipal purposes. The clerk of the county board of supervisors may not remit the assessment roll for the city until the 15th of November, and this would leave but little time for the common council to act upon the assessment roll, and levy such sums as might be necessary to be raised for city and ward purposes, — and for the city clerk to complete the tax roll ready to be delivered to the treasurer for collection. These and other considerations have therefore led us to the conclusion that the legislature did not intend, by the enactment of 1860, to supersede and abrogate all the provisions of the amendment to the charter of 1859 relating to a board of review, so far as city and ward taxes were concerned. And if this view be correct, it does away with all the objections taken to the assessment rolls in the present case. The taxes were levied upon an assessment roll lawfully equalized.

It is further objected that there was an unlawful addition of

ten cents to the amount of tax for which the lot was sold. By the charter the treasurer was allowed ten cents for each certificate by him issued on sale of lands for delinquent taxes, which was to be added to the amount of such tax, and included in the certificate. (Sec. 22, ch. 8 of the charter of 1852.) Section 44, ch. 117, P. & L. Laws of 1858, provided that the salary of the treasurer should be $2,500, which should be in lieu of all other compensations, and that "*any commission or percentage allowed the treasurer by law for collection of taxes or on the sale of lands, shall be paid by him into the city treasury.*" One of the counsel for the defendant insists that the words "commission" or "percentage" cannot fairly be construed as including the ten cent fee for the certificate of sale given by the charter. It seems to us that this is quite too great a refinement upon language. The object of the amendment of 1858 manifestly was, to fix the salary of the city treasurer at a given sum, and to require that all fees and commissions which he had theretofore received should be paid into the city treasury for the benefit of the city.

The last objection we deem it necessary to notice is the one taken to the special tax of forty-five cents for cleaning the street in front of the lot. It is insisted that this special tax is wholly unauthorized. By various amendments to the city charter, the street commissioners of the several wards are authorized to require the owners of lots to cleanse and repair streets and alleys opposite their respective lots as far as the center of such streets and alleys, and they are empowered to make contracts for the doing of this work in case the owner neglects to perform it (sec. 7, ch. 26, P. & L. Laws of 1853; sec. 23, ch. 117, P. & L. Laws of 1858; and sec. 3, ch. 356, P. & L. Laws of 1860); and the expense is made chargeable upon the lot in front of which such cleaning is done. It appears that the street commissioners of the seventh ward published for six days in the official papers, in April, 1862, a notice to all owners and occupants of lots fronting on any street or abutting

on any alley in said ward, to clean the sidewalks and the alleys to the center thereof, and also half the width of the street in front of their lots, at the times and in the manner there pre- scribed, and that, in case any owner did not comply with the regulations, the commissioners would cause the work to be done and the expense charged to the proper lot.   It appears further, that the commissioners invited proposals and entered into a contract with the lowest bidder for doing the work, where the owners failed to perform it.   We shall not notice in detail the several objections taken to the proceedings of the commissioners. It seems to us that they are in substantial, if not in strict con- formity to the requirements of the charter.   And after our numerous decisions upon the subject of local assessments for the repair and improvement of streets at the expense of the ad- joining lots, the power of the legislature to make the cleaning of streets and alleys chargeable upon the lots in front of which such work is done, would seem to be a question not open for discussion.

We think the county court properly directed the jury to find for the plaintiff, there being no valid objection to the tax proceedings, nor to the tax deed offered in evidence.

*By the Court.*—The judgment of the county court is affirmed.

A motion for a rehearing was denied.